NOME BEACH LIGHTERAGE & TRANSPORTATION CO. v. MUNICH ASSUR. CO., Limited, et al.

(Circuit Court, N. D. California. June 15, 1903.)

No. 13,098.

1. MARINE INSURANCE—SEAWORTHINESS OF VESSEL—EVIDENCE OF CUSTOM.

On an issue as to the seaworthiness of an insured vessel for a voyage from San Francisco to Nome, the contention of defendant being that as the vessel was not sheathed she was not reasonably fitted to encounter the ice which she might be expected to meet in Behring Sea at that season, it was not error to submit to the jury for their consideration evidence that vessels generally making such voyages were not sheathed, although in fact the navigation to Nome first commenced that season, and its conditions and requirements had not been established; such fact going to the weight, and not to the relevancy or materiality, of the evidence.

2. INSTRUCTIONS—EXPRESSION OF OPINION BY JUDGE.

It is not reversible error for the judge in a federal court to express his own opinion of the facts, if the rules of law are correctly laid down, and the jury are given to understand that they are not bound by such opinion.

3. MARINE INSURANCE—ACTION ON POLICY—DEFENSES.

An allegation in the answer of an insurance company sued to recover for the loss of an insured vessel wrecked by floating ice encountered in Behring Sea that plaintiff sailed the vessel "into said ice knowing full well that so to do endangered the safety of said vessel" is not an allegation that the loss of the vessel was "caused by the willful act of the insured," within the terms of Civ. Code Cal. § 2629, which exonerates the insurer from liability for such a loss, but an allegation of negligent navigation, which under said section, as well as under the general law, constitutes no defense to liability, where, as in such case, the loss arose from a peril of the sea, which was a peril insured against.

4. SAME—UNSEAWORTHINESS—BURDEN OF PROOF.

The burden of proving unseaworthiness as a defense to an action on a marine policy of insurance to recover for the loss of a vessel rests on the defendant.

Action on Policy of Marine Insurance.   On motion by defendants for new trial.

Nathan H. Frank, for plaintiff.
Van Ness & Redman, for defendants.

MORROW, Circuit Judge.   This is an action brought May 31, 1901, by the plaintiff to recover from the defendants the sum of $2,500, claimed to be due under a policy of insurance issued by the defendants insuring plaintiff's interest as owner in the body, machinery, tackle, apparel, and other furniture of the barkentine Catherine Sudden, for the period of one year, beginning on the 26th day of March, 1900, and continuing until the 26th day of March, 1901. By the terms of the policy the defendants insured the plaintiff against perils of the sea and other losses and misfortunes in said policy mentioned, and permission was granted to make one trip to Cape Nome. It is alleged in the complaint that after the insurance was effected, and on the 3d day of June, 1900, while the insured vessel was proceeding upon a voyage from the port of San Francisco to the port of Nome, Alaska, the vessel was totally lost by perils of the sea. It is alleged that the vessel, at the time of effecting the insurance and at the time of her departure upon the said voyage, was seaworthy.

The defendants in their answer deny that the vessel was lost by perils of the sea, but allege that whatever loss was suffered by plaintiff by reason of injury to the vessel resulted from want of proper and ordinary care upon the part of plaintiff, in the following particulars:

"That the said vessel, the Catherine Sudden, sailed upon the voyage mentioned in the complaint from San Francisco, California, bound for Nome, Alaska, and while proceeding upon said voyage, and on or about the 28th day of May, 1900, passing through and out of Umalak Pass into Behring Sea, met drift ice, and within twenty-four hours thereafter met with large fields of ice, and within forty-eight hours thereafter ran into and was surrounded with heavy ice, and thereafter, and on or about the 3d day of June, 1900, the said vessel was struck by ice on her port bow, and said bow was

¶ 4. See Insurance, vol. 28, Cent. Dig. § 1652.

thereby stove in; that by reason of this injury to said vessel she was so crippled that she was compelled to seek and obtain the assistance of the steamer Corwin, which said steamer did then and there take her in tow, and towed her into Nome, Alaska."

It is further alleged that plaintiff well knew the danger attendant upon the sailing of the vessel into the ice, and that it was not consistent with good seamanship, and that the exercise of due and proper care required the plaintiff to change the course of the vessel when ice was encountered, and to seek open water or a port of safety until danger from ice had passed, and had plaintiff exercised such due and proper care said accident to said vessel would not have happened; that plaintiff negligently and carelessly, and without due care, sailed said vessel into the ice in Behring Sea in the manner in the answer set forth, and failed to exercise ordinary care in protecting said vessel from the danger of contact with said ice. The defendants deny that the said vessel was, at the time of effecting the insurance in question or at the time of her departure upon the voyage to Cape Nome, seaworthy, and allege that in making the voyage at that season it was to be anticipated that ice might be encountered in Behring Sea; and defendants further allege, upon information and belief, that the said vessel was of insufficient strength to be sailed in said sea under said circumstances.

Upon the trial of the case a verdict was rendered in favor of the plaintiff in the sum of $2,500, with interest at 7 per cent. per annum from date of claim.

The defendants have moved for a new trial, upon the grounds that the evidence was insufficient to justify the verdict, and that the verdict was against law, and specify as errors of law the refusal of the court to instruct the jury as requested by the defendants, and the giving of certain instructions.

The motion for a new trial relates to two defenses: (1) That the vessel was unseaworthy; (2) that there was an assumption of an unwarranted risk on the part of the vessel in the effort made to reach Nome under the circumstances and conditions prevailing in Behring Sea at the time the voyage in that sea was undertaken. These defenses were largely questions of fact, and it is contended by the defendants that they were not submitted to the jury with proper instructions by the court, and that in the instructions given these two defenses were so confused as to mislead the jury, to the defendants' prejudice.

With respect to the defense that the vessel was not seaworthy, the court instructed the jury as follows:

"It is denied that the vessel was seaworthy, and in this behalf the defendants allege that it was to be anticipated that the ice might be encountered during the time said voyage was undertaken, and that said vessel was of insufficient strength to be sailed into said sea under said circumstances. The effect of these allegations in the answer as to the seaworthiness of the Catherine Sudden is that the vessel was not seaworthy to sail into or encounter ice, but that in the exercise of proper care in the navigation of the vessel, under the circumstances of the voyage in question, she would not have encountered ice, and would have escaped the injury complained of. It is not denied that the vessel was seaworthy for careful navigation, but the contention in the answer is that she was carelessly navigated, and that the acci-

dent and loss in the case resulted from such want of care or negligence. I am therefore of the opinion that there is no question as to the seaworthiness of the Catherine Sudden in this case. And as to the alleged negligence in the navigation of the ship, that is not a defense unless it is of such a degree as amounts to willfulness, and willful negligence is not alleged in the answer, nor do the facts in the case justify an inference of willful negligence. But out of caution I submit to you, as a question of fact for your decision, without reference to the opinion which I have expressed as to such question, the question whether the Catherine Sudden was seaworthy; and as to this I instruct you that in every case of marine insurance upon a ship it is warranted by the insured that the ship is seaworthy, and a ship is seaworthy only when it is reasonably fit to perform the services and to encounter the ordinary perils of the voyage contemplated by the parties. If you find that the barkentine Catherine Sudden was not seaworthy—that is, was not reasonably fit to perform the services and to encounter the ordinary perils of the voyage contemplated by the parties to the policy—then, and in that case, your verdict should be for the defendants.

"I instruct you that the law does not require that the vessel shall be of the very best construction, or have the very best equipment that modern science can invent, but only that she shall be reasonably fit to encounter the ordinary perils of the voyage contemplated by the parties to the policy. The law does not require that she shall be fit to encounter extraordinary perils."

It appeared from the evidence that the planking in the vessel was from 4 to 4½ inches in thickness, and that she was not sheathed. Evidence was introduced on the part of the defendant tending to show that an unsheathed vessel should not go into the ice of Behring Sea, while, on the other hand, the evidence on the part of the plaintiff tended to show that vessels engaged in the Nome trade that season were not generally sheathed. With respect to this question the court instructed the jury:

"In determining whether or not a vessel is reasonably fit for the service in which she is to engage, you may take into consideration the practice of merchants and seafaring men engaged in that trade, and if the vessels engaged in the Nome trade generally are not sheathed or otherwise specially constructed to meet ice you may take that fact into consideration in determining whether or not such sheathing or special construction is necessary to render a vessel reasonably fit to encounter the ordinary perils of that voyage."

The objection to this instruction appears to be that the Nome trade had just commenced, and its conditions had not been established, the wild rush of passengers and freight to the gold fields at and near this point causing carriers to take unusual and unsafe risks, and to incur perils not contemplated by the insurance law. This objection goes to the weight of the evidence, but not to its relevancy or materiality. It seems to me that the court committed no error in calling the attention of the jury to it in connection with the other matters mentioned in the instructions, and upon the whole instruction relating to this question I think the controversy as to the seaworthy condition of the vessel was submitted to the jury without prejudice to the rights of the defendants.

One of the instructions requested by the defendants in this behalf was as follows:

"Unless the barkentine Catherine Sudden was so constructed and was in such condition at the time that she left San Francisco for Nome as to be reasonably fit to encounter and survive the peril of ice in the Behring Sea under such circumstances and conditions as were to have been reasonably

anticipated upon the voyage, then she was not seaworthy, and if you so find your verdict must be for the defendants."

This instruction the court did not give, but the court did instruct the jury, as requested by the defendants, that in every case of marine insurance upon a ship it is warranted by the insured that the ship is seaworthy, and that a ship is seaworthy only when it is reasonably fit to perform the services and to encounter the ordinary perils of the voyage contemplated by the parties. This instruction covered the whole question, and stated the law correctly, and the observation of the court that in its opinion there was no question as to the seaworthiness of the Catherine Sudden in this case did not take the case from the jury; for, notwithstanding this observation, the learned judge said:

"I submit to you as a question of fact for your decision, without reference to the opinion I have expressed as to such question, the question whether the Catherine Sudden was seaworthy."

It is not a reversible error in the judge to express his own opinion of the facts if the rules of law are correctly laid down, and if the jury are given to understand that they are not bound by such opinion. Doyle v. Union Pac. Ry., 147 U. S. 413, 13 Sup. Ct. 333, 37 L. Ed. 223; Allis v. United States, 155 U. S. 117, 123, 15 Sup. Ct. 36, 39 L. Ed. 91.

The second defense involved in this motion is that there was an assumption of an unwarranted risk on the part of the vessel in the voyage to Nome at the time and under the circumstances and conditions prevailing in Behring Sea when the voyage in that sea was undertaken. The instructions requested by the defendants upon this feature of the case are as follows:

"An insurer is not exonerated by the negligence of the insured, or of his agents or others, but an insurer is not liable for the 'willful act of the insured. If from the evidence you find that the plaintiff, as owner of the Catherine Sudden, dispatched her upon the voyage to Nome intending and with the understanding that she should sail into the Behring Sea without regard to the presence of ice therein, and that by reason of her construction and condition she was not fit to go into that sea and into the ice therein at the time and under the circumstances that she did go into said ice, and that so going into said sea under said circumstances and at said time she was likely to meet with the accident which in fact befell her, then and in that case your verdict must be for the defendants.

"If the owner of an insured vessel sends that vessel against a known and understood peril, knowing and understanding that by reason of said peril the vessel is likely to be wrecked or otherwise injured, and she is in fact injured by reason of such peril, the underwriter is not liable for any damage resulting therefrom.

"In the navigation of the Catherine Sudden from San Francisco to Nome the captain of said vessel was the agent and representative of the plaintiff, and if he put his vessel into the ice in Behring Sea knowing that she was not fit to go into that ice, and was likely to meet with the accident which in fact befell her, plaintiff is responsible for what he did; and if you find, as already stated, that the master, under these circumstances, put the vessel into the ice when he should not have done so, then and in that case your verdict must be for the defendants."

These instructions were not given, but the court did read to the jury that portion of defendants' answer in which this defense was

set up, and explained to the jury that the effect of the allegations of the answer as to the seaworthiness of the vessel was that it was not seaworthy to sail into or encounter ice, but that in the exercise of proper care in the navigation of the vessel under the circumstances of the voyage in question she would not have encountered ice and would have escaped the injury complained of. The court said further:

"It is not denied that the vessel was seaworthy for careful navigation, but the contention in the answer is that she was carelessly navigated, and that the accident and loss in the case resulted from such want of care or negligence."

It is objected to this instruction that it did not touch the real question before the court and jury, and that it confused the defense that the vessel was not seaworthy with the defense that the vessel assumed an unwarranted risk. The first observation to be made with respect to this objection is that the defendants in their answer make negligent and careless navigation a specific defense. In the second or affirmative defense to the action the defendants allege "that in sailing the insured vessel 'Catherine Sudden' from San Francisco to Nome upon the voyage alleged in the complaint plaintiff failed and neglected to exercise ordinary care in the making of said voyage and the sailing of said vessel, and negligently and carelessly so navigated and sailed said vessel as to cause the injury thereto, by reason of which the said vessel was wrecked as in the complaint alleged." The answer then proceeds to specify the negligence and carelessness which caused the wreck, repeating the allegations of the first defense hereinbefore referred to in relation to the vessel passing through Umalak Pass into Behring Sea and meeting drift ice, and within 24 hours thereafter meeting with large fields of ice, and within 48 hours thereafter running into and being surrounded with heavy ice, and thereafter, and on the 3d day of June, being struck by ice on her port bow, alleging that her bow was thereby stove in. It is true that the defendants allege further in their answer "that they are informed and believe, and upon such information and belief allege, that plaintiff sailed the said Catherine Sudden into said ice knowing full well that so to do endangered the safety of said vessel."

Section 2629 of the Civil Code of this state provides: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of his agents, or others." It is contended by the defendants that the answer alleging that the plaintiff knew full well that sailing the Catherine Sudden into the ice would endanger the safety of the vessel was tantamount to an allegation that the vessel was wrecked by the willful act of the insured. The defense would then come within the first provision of section 2629 of the Civil Code, and escape the liability provided in the second provision. It seems perfectly plain, however, that the defense set up in the answer now under consideration was the claim that the insured was guilty of negligence in navigating the vessel in Behring Sea under the circumstances and conditions prevailing at the time the voyage was being prosecuted. But, whatever view is taken of this defense, it is clear that it cannot avail the defendants. It is not alleged that the loss of the vessel was

caused by the willful act of the insured, nor would the evidence in the case tend in any degree to support such an allegation, if it had been made. The sailing of the vessel on the voyage to Nome was contemplated by the parties to the insurance contract, and was, of course, the willful act of the insured, and so specifically was the sailing of the vessel into Behring Sea; but this is as far as the defendants can go in making the willful act of the plaintiff a ground for relieving them from liability on the insurance contract. The vessel was on the 3d day of June, 1900, struck by ice on her port bow, and the bow was stove in, as alleged in the answer; but this collision with the ice was not the willful act of the insured, or of any of its agents or servants. A single sentence in the uncontradicted testimony of J. L. Panno, the master of the vessel, places this question beyond a doubt. He said:

"When in the ice I was doing all, as a prudent mariner, to avoid contact with the ice, and doing all I could do, anyhow. I could not avoid this piece of ice coming down and striking me; if I could, I should have done it mighty quick. It occurred merely because it is one of those things that is likely to happen to any vessel when in a floating sea of ice under the conditions such as existed when I was there."

The vessel was in a floating sea of ice. Other vessels had gone through, and the master thought he could take this vessel through, but a piece of ice struck the vessel on the port bow, and she became disabled. This was the proximate cause of the accident, and we are not required to prosecute the inquiry further. "When a peril of the sea is the proximate cause of a loss, the negligence which caused that peril is not inquired into, not because the underwriter has taken upon himself all risks arising from negligence, but because he has assumed to indemnify the insured against losses from particular perils, and the assured has not warranted that his servants will use due care to avoid them." General Mutual Ins. Co. v. Sherwood, 14 How. 351, 365, 14 L. Ed. 452.

The misconduct of the master, unless affected by fraud or design, will not defeat a recovery on the policy. Orient Ins. Co. v. Adams, 123 U. S. 67, 73, 8 Sup. Ct. 68, 31 L. Ed. 63. Public policy requires no more than that a man be not suffered to insure against his own knavery. American Ins. Co. v. Insley, 7 Pa. 223, 230, 47 Am. Dec. 509.

The court having submitted to the jury the question whether the vessel was reasonably fit to perform the services and to encounter the ordinary perils of the voyage contemplated by the parties to the insurance contract, the evidence in the case did not call for the instructions requested by the defendants relating to the sending of the vessel against such perils.

The instruction that the loss was a loss by perils insured against was correct, considered with respect to the other instructions given by the court.

The court instructed the jury that the plaintiff had only to make out a prima facie case of seaworthiness, and the burden of proving the vessel unseaworthy then rested upon the defendants. If, then, the jury should find the testimony regarding seaworthiness of the

vessel evenly balanced, it would be the duty of the jury to find for the plaintiff upon that question. In Adderly v. American Mut. Ins. Co., Fed. Cas. No. 75, Chief Justice Taney held that the burden of proof of unseaworthiness was on the defendant. To the same effect is Bullard v. Roger Williams Ins. Co., Fed. Cas. No. 2,122; Lunt v. Boston Marine Ins. Co. (C. C.) 6 Fed. 562; Moores v. Louisville Underwriters (C. C.) 14 Fed. 226; Guy v. Citizens' Mut. Ins. Co. (D. C.) 30 Fed. 695; Earnmoor v. California Ins. Co. (D. C.) 40 Fed. 847. The allegation in the defendants' answer that the vessel was unseaworthy was therefore an affirmative allegation on their part, and under the rules of evidence in such cases they were required to prove it by a preponderance of evidence, and failing in this the plaintiff was entitled to recover. The instruction of the court was therefore correct.

Finding nothing in the proceedings that would warrant a new trial, the motion of the defendants is denied.