HALL et al. v. AMES et al. †

(Circuit Court of Appeals, First Circuit. May 18, 1911. On Motion for Restraining Order, June 28, 1911.)

No. 915.

1. COURTS (§ 508*)—JURISDICTION OF FEDERAL COURTS—FEDERAL AND STATE COURTS—COMITY.

. A Circuit Court of the United States is without authority on an independent original bill to review the proceedings, orders, and decrees of a state court of general jurisdiction made in a pending suit between the same parties, by which the state court determined the scope of its own jurisdiction and established rights in property which was the subject-matter of the litigation.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*

Lack of jurisdiction of United States Circuit Court, see note to Carnegie, Phipps & Co. v. Hulbert, 16 C. C. A. 507.]

2. INJUNCTION (§ 38*)—PROTECTION PENDING LITIGATION—INJUNCTION PENDING PROCEEDINGS FOR FURTHER REVIEW.

A motion in a Circuit Court of Appeals, after an affirmance in a suit to enjoin proceedings in a state court, in which the court below held that it was without jurisdiction, to enjoin appellees from availing themselves

of rights given them by the decree of the state court until appellants could apply to the Supreme Court for a writ of certiorari, denied.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 86-90; Dec. Dig. § 38.*]

Appeal from the Circuit Court of the United States for the District of Maine.

Suit in equity by James M. W. Hall and others against Alfred K. Ames and others. Decree for defendants, and complainants appeal. Affirmed.

For opinion below, see 182 Fed. 1008.

Burton E. Eames and Joseph W. Symonds (Tyler & Young, C. H. Tyler, O. D. Young, and Symonds, Snow, Cook & Hutchinson, on the brief), for appellants.

Herbert M. Heath (Heath & Andrews, on the brief), for appellees.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

ALDRICH, District Judge. [1] This case in effect raises the question whether the Circuit Court of the United States, under an independent and original bill, has authority, and ought, to review the proceedings, orders, and decrees of a state court of general jurisdiction, for the purpose of finding whether, in the course of the proceedings in that court, there was error in dealing with the subject-matter with which the litigation was concerned.

The opinion of the learned judge of the Circuit Court (182 Fed. 1008) shows an exhaustive examination of the questions now raised before us, and the treatment of these questions is so exhaustive that we might well rest our decision upon the reasoning of the opinion in the Circuit Court. We refer to that opinion for a more complete description of the subject-matter of the controversy and of the proceedings in the state court than we shall undertake to give, as reiteration is deemed unnecessary. We may, however, state that the parties plaintiff here were, upon an original bill by the senior Hall and upon intervening process by others, parties plaintiff in the state court of Maine, a court of general jurisdiction, in which they voluntarily submitted their rights to that court, and sought relief in respect to the stock of the Machias Lumber Company, a Maine corporation, in which they were interested as stockholders; that the proceeding in that court was concerned with a certain trust agreement, which contained certain provisions as to sales, and also with a stipulation filed under order of court pendente lite, to which considerable importance was apparently attached by the Maine court as extending its jurisdiction as to parties and the kind of relief which should be granted.

The defendants here are the same as the defendants in the proceeding in the state court, and the subject-matter is the same as in that court; and, while the case was still pending at the time the bill was filed in the Circuit Court, the cause had well advanced toward a final decree in the state court.

The plaintiffs in their bill in the Circuit Court ask for an injunc-

tion in respect to rights which the state court sought to establish in behalf of the defendants; and this means, if the relief is to be granted, that the merits must be re-examined, and that what was done in the state court must be undone, because, as alleged and argued, that court improperly sought to establish certain rights in respect to a sale of stock.

The general ground upon which relief is asked is that the state court undertook to establish property rights in respect to questions not in issue upon the pleadings, and in respect to property of persons who were not parties to the proceeding; but the particular ground is that what was done by the state court is a nullity because that court exceeded its authority.

There might be force in the argument upon the particular ground presented, that of alleged nullity, provided the orders and decrees of the state court, against which complaint is made, clearly assumed to deal with parties or with subject-matter not involved in the litigation before it. But here the parties are the same, and the res is the same; and the res must be accepted as at least constructively in the custody of the courts of the state of Maine.

If the subject-matter were distinctly different and the parties not the same, the proposition would be quite a different one; but, as that was not the case with which the Circuit Court had to deal, it is quite unnecessary that this court should undertake to determine what the power of the Circuit Court would be with respect to the rights of parties under process of a state court of general jurisdiction, expressly directed against property which was not in the litigation before it. In the particular situation which we have to consider, it goes without saying that, if it were within the powers of a Circuit Court of the United States to afford the relief sought, it could not be done without an investigation of questions relating to the merits of the controversy in respect to the subject-matter before the state court, and of questions relating to the regularity of the proceedings in that court.

At the arguments before us the views of the contending parties were stated with great force by able and experienced counsel; but, after all, nothing was urged which discloses any view not covered, and correctly covered, as we think, by the exhaustive opinion handed down in the Circuit Court.

If there is, under the federal Constitution, power in the United States courts to deal with a case in which it is claimed that the rights of persons have been invaded through the exercise of authority by state courts under erroneous construction of the laws of the state in respect to their own jurisdiction or under unwarranted interpretations of the scope of the issues before them, it is quite certain that such power does not vest in the Circuit Court, under an independent collateral proceeding to review a cause heard and determined by a state court of general jurisdiction, to the end that the results of a proceeding in that court shall be overthrown. Not only is there no such reasonable authority existing in the Circuit Court of the United States as a court of review, but considerations of comity forbid attempts by one court, which would have had jurisdiction of the subject-matter

and of the parties if relief had been first sought therein, to interfere with the proceedings of other courts of general jurisdiction established by other governments.

In Cornue v. Ingersoll, 176 Fed. 194, 99 C. C. A. 548, certain parties instituted proceedings in the state court to have the question tried as to their ownership of a certain fund in the custody of the probate court in Massachusetts, against which the Circuit Court of the United States, under a mandate from the Supreme Court, had already formulated a lien decree. The effect of that proceeding was to set up that the United States courts had assumed to establish rights with respect to property not in their custody and with respect to parties not before them; and it was held, among other things, that the decree could not be collaterally attacked by a suit in the state court; and that, if the case was one of judicial invasion of rights without notice, the grievance was one which did not require resort to independent process in another court—process which, in substance and effect, if maintained, must entirely ignore the intended operative effect of the decision of the Supreme Court affirming the proceedings in the Circuit Court, and that the rule which requires direct attack, and forbids collateral attack, upon final judgments and decrees, is a rule of public and judicial necessity, founded upon considerations which wholly exclude the idea of a laxity, as between courts of first instance general jurisdiction, which shall tolerate an independent collateral proceeding to disestablish in another court, and upon another trial, that which has been expressly established upon a former trial, upon the merits, in a court of general jurisdiction.

We see no reason why the same rule should not apply in this case. The Maine court was a court of general jurisdiction; and it assumed to establish certain property rights, and rights of sale, under its own ascertainment of its jurisdiction, resulting from the proceedings and the issues before it, and as enlarged by its own construction of a certain stipulation between the parties, which was made under an order of the court, and which was an incident of the equitable proceeding which it was considering.

The proposition of the complainant in the Circuit Court, and here, in effect involves the idea that the Circuit Court should review the controversy between the parties, including the questions in respect to the interpretation which the Maine court put upon its own powers as to the disposition of property constructively in its possession. The learned judge of the Circuit Court observed, and we think the observation sound, that that court could not on the record revise either directly or indirectly the proceedings of the Supreme Judicial Court of Maine. It was there said:

"The rules which govern us are precisely the same as would govern any court of superior and general equity jurisdiction, whether as between a federal court and a state court, or vice versa."

Again it was there said:

"But it is insisted that relief is sought for here which was not in issue before the Supreme Judicial Court of Maine, or not disposed of by it. All these propositions are met by the fundamental fact that we cannot get at those ad-

ditional issues without walking over the body of what has been decided by that court, or held in reserve by it. We are not at liberty to restrict in any way the powers of that court over the subject-matter involved here either directly or indirectly with reference to what has been done or has not been done, or by anticipating what may or may not be done."

It is quite true, as we think, in order to give the relief which the complainant seeks, and upon the ground upon which it is sought, that the Circuit Court would have to review the merits of the questions with reference to the subject-matter involved, the regularity of the proceedings in the state court, and the state court's interpretation of its jurisdiction and of the proceedings before it, together with its construction of the stipulation of the parties, which apparently, under the view of that court, enlarged its jurisdiction. The ground of the relief sought, therefore, necessarily contemplates that the Circuit Court shall review the whole situation, and disestablish rights which the state court has assumed to establish. This is something which we think the Circuit Court of the United States, under the judicial relations existing between the federal and the state governments, has no right to do.

In some of the cases relied upon by the complainants, who are seeking this relief, the rights involved had reference to judgments or decrees set up in legal bar by parties holding the judgments or decrees, and where the constitutional full faith and credit was therefore demanded; and in others the questions were directly raised in the same or ancillary proceedings. But here the Circuit Court, in an independent and collateral proceeding, is asked to seize upon a controversy pending in the state courts, and to make different findings in respect to jurisdictional facts, and to give affirmative relief, which, if granted, must necessarily be based upon an overthrow of rights already ascertained and established in that court. This plan involves a very different proposition from that in the cases relied upon by the complainants. The plan here suggested would be quite subversive of the rules of right, and of the rules of comity, existing between courts whose jurisdiction in respect to a given subject-matter depends altogether upon the fact as to which court first assumed jurisdiction and sought to ascertain and establish the rights in controversy between the parties.

We are not called upon to define the extent of the authority of the Supreme Court of the United States under the provisions of the federal Constitution in respect to the obligation of contracts, due process of law, and full faith and credit, an authority usually exercised by the Supreme Court upon writ of error to the state court, which, of course, is not a collateral but a direct proceeding in the same case to review the decision against which the attack is directed.

It is strongly urged that the Circuit Court had power to enjoin the parties from proceeding under the sale ordered by the state court, upon the ground that that court exceeded its authority in respect to the stock which was in controversy before it. But, under the particular circumstances of this case, the question whether the state court exceeded its authority could not be ascertained without a review of the state court's determination of questions of construction and in-

terpretation; and, if a Circuit Court of the United States has any authority whatever, in an independent proceeding, to determine an issue of nullity based upon alleged excessive assumption of jurisdiction by a state court, when such an issue in the slightest degree necessitates an exercise of supervisory jurisdiction or a review of a state court proceeding—a proposition which we do not here discuss—it is quite safe to say that at most it would be much less than that exercised by the Supreme Court.

In Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464, a writ of error from the Supreme Court of the United States to the Court of Chancery of the State of New Jersey, which involved an attack upon the decision of the New Jersey court upon the ground that that court had exceeded its jurisdiction because the judgment was not responsive to the issues presented by the pleadings, it was said, at page 268 of 140 U. S., at page 777 of 11 Sup. Ct. (35 L. Ed. 464):

"The inquiry is: Had the court jurisdiction to the extent claimed? Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and third, the point decided must be in substance and effect within the issue."

Governed by the rule enunciated in Reynolds v. Stockton by a court of broader authority than the Circuit Court, no justification would be found for interfering in the present situation, because it appears from the record that the subject-matter of the litigation was before the state court, and that the state court ascertained and established rights under its own interpretation of the laws of Maine, and under its own construction of a stipulation filed by the parties. The parties and the property were thus before the court, and, upon the assumption that it had a right to do so, that court ordered a sale of the stock.

The wise and wholesome rules, in respect to right and comity, governing the various courts existing under our dual system, are stated in an opinion of the Supreme Court by Mr. Justice Matthews in Covell v. Heyman, 111 U. S. 176, at page 182, 4 Sup. Ct. 355, at page 358, 28 L. Ed. 390:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise toward each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and, although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and, when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues. 'The jurisdiction of a court,' said Chief Justice Marshall, 'is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on

the process, subsequent to the judgment, in which jurisdiction is to be exercised.' "

See, also, Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Randall v. Howard, 67 U. S. 585, 17 L. Ed. 269; Ober v. Gallagher, 93 U. S. 199, 23 L. Ed. 829; Leadville Coal Company v. McCreery, 141 U. S. 475, 12 Sup. Ct. 28, 35 L. Ed. 824; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; Southern Bank & Trust Company v. Folsom, 75 Fed. 929, 21 C. C. A. 568.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.

On Motion for Restraining Order.

Before COLT, Circuit Judge, and DODGE, District Judge.

PER CURIAM. [2] The original bill in this case asked the Circuit Court to enjoin the sale of 1,277 shares of stock of the Machias Lumber Company by the Merrill Trust Company, then holding them under a trust agreement; or that, in the event that such sale should be permitted, the respondents Ames and Wing be enjoined from bidding or purchasing at any such sale. The injunction asked for was denied November 23, 1910, on the ground that the Circuit Court was without jurisdiction. The final decree, dismissing the bill, was entered December 21, 1910.

The proposed sale referred to has since been made, and the 1,277 shares of stock bought by the respondent Wing. The stock has also been transferred. All this has been done under the authority of a decree by the Supreme Judicial Court of Maine, in which, according to the complainant's contention, that court exceeded its authority.

From the Circuit Court's denial of the injunction and dismissal of the bill the complainants appealed, but their appeal was dismissed by this court May 18, 1911.

Previous to the dismissal of their appeal, the complainants had applied to this court to enjoin the present owners of the stock referred to from voting upon it at the Machias Lumber Company's annual meeting on March 7, 1911, or any adjournment thereof. Notwithstanding the dismissal of their appeal, this motion is now pressed, upon the suggestion that the complainants desire a rehearing or an opportunity to apply for certiorari to the Supreme Court. The annual meeting referred to having been adjourned from time to time, the stock in question has not as yet been actually voted upon.

We shall assume, what does not seem to be strenuously denied, that this court has inherent power to make in its discretion such restraining orders as may be necessary to preserve the status quo between the parties until the final disposition of any pending appeal.

But the facts in the present case do not seem to us to afford sufficient justification for such a use of this discretionary power of the court as the complainants now request. As has been stated, the stock referred to has been sold under and according to decrees and orders of the Maine Supreme Court in litigation to which the complainants

were parties. There was no resort by them to the federal courts until after the result adverse to them in the state court.

The Circuit Court, and afterward this court on appeal, have determined, without hesitation or dissent, that the federal court is without jurisdiction to interfere between the parties in the manner requested by the complainants.

There is no appeal pending to which the complainants are entitled as of right, nor can there be any. Their petition for rehearing in this court has been denied since the hearing on their present motion. The possibility that a writ of certiorari might be ordered does not seem to us sufficient to justify us in further delaying the respondents.

We consider the risk of damage, loss, or inconvenience to the respondents involved in the issuance of such an order as is asked for, greater than the risk to which, in the absence of such an order, the complainants are exposed.

Under all the circumstances, we are unable to believe that the issuance of such an order would be justified.

The motion is denied.